MOORE, Judge.
Kenneth Deroy Holder (“the husband”) appeals from a divorce judgment entered by the Pickens Circuit Court (“the trial court”). We affirm in part and reverse in part.

Procedural History

On June 22, 2010, Lexa Boyd Holder (“the wife”) filed a complaint for a divorce from the husband. On August 10, 2010, the husband answered and counterclaimed for a divorce. On September 23, 2010, the wife filed a reply to the husband’s counterclaim. On February 4, 2011, the parties and their attorneys appeared before the trial court and announced that they had reached a settlement agreement on all issues. The agreement was read into the record in open court and both parties indicated their assent to the agreement. On March 3, 2011, the husband filed a “Motion for Relief Pursuant to Rule 60(b)[, Ala. R. Civ. P.,]” in which he sought to rescind the settlement agreement. On March 4, 2011, the trial court entered a divorce judgment based on the parties’ settlement agreement. On March 23, 2011, the husband filed a motion to vacate the judgment, to stay enforcement of the judgment, and for a new trial. After conducting a hearing on the husband’s motions on April 1, 2011, the trial court entered an order on April 12, 2011, that effected three changes to the March 4, 2011, divorce judgment and otherwise denied the husband’s motions. The trial court also ordered the husband to pay the wife an attorney fee in the amount of $1,200. On April 13, 2011, the husband filed his notice of appeal to this court.

Discussion

I.

On appeal, the husband first argues that the trial court erred in enforcing a provision of the settlement agreement that required the husband to refinance the parties’ marital residence. Specifically, he argues that the settlement agreement should not have been enforced because, he says, he attempted to secure the financing required under the settlement agreement but was unable to do so.
“Agreements between parties to divorce actions are generally binding, and such agreements will not be set aside, ‘except for fraud, collusion, accident, surprise or some other ground of this nature.’ ” Grantham v. Grantham, 656 So.2d 900, 901 (Ala.Civ.App.1995) (quoting Brocato v. Brocato, 332 So.2d 722, 724 (Ala.1976)). “[A]n agreement reached in settlement of litigation is as binding upon the parties as any other contract. Furthermore, there is a strong policy of law favoring compromises and settlements of litigation, especially in cases involving families.” Tidwell v. Tidwell, 505 So.2d 1236, 1237 (Ala.Civ.App.1987).
In the present case, the parties’ settlement agreement as set forth in the divorce judgment, as amended, stated:
“The [husband] shall contract for an appraisal, using an appraiser approved by the lender refinancing the debt, to be performed on the marital domicile and the five acres upon which it is currently *1003 situated, for the purpose of refinancing the same and upon said refinancing shall pay unto the [wife] one-half of the equity in said marital domicile to be determined by subtracting from the appraised amount ... the indebtedness owed on the mortgage on said house and five (5) acres. Said sum shall be paid by the [husband] to the [wife] upon his refinancing of the property, removing the [wife] from any liability whatsoever on said mortgage indebtedness. [The husband] shall refinance the indebtedness on the marital domicile not later than 90 days from the date of th[e] execution of this Decree. At the same time the [husband] shall likewise pay unto the [wife] the sum of Ten Thousand Dollars ($10,-000.00) for the additional ten (10) acres to be acquired by the [husband] from the total acreage owned by the parties hereto.”
At the hearing on the postjudgment motions, the husband testified that, in attempting to refinance the mortgage on the marital residence and the five acres on which it was situated, he had contacted only one bank, which, he testified, was not the same bank that was holding the existing mortgage. He testified that he had sought to finance $183,400, which he testified was the amount he determined he would need in order to payoff the existing mortgage indebtedness, to pay the wife her equity in the marital residence and 5 acres, and to pay the wife the $10,000 for the additional acreage he was obtaining, but that the bank had declined his loan request because his debt-to-income ratio was too high.
The husband testified that the marital residence had been appraised at a value of $265,000 in 2009 and that, two or three days before the postjudgment hearing, he had contacted a real-estate agent, who had advised him that, if he were to sell the home and the five acres, he should list it for sale at $189,000. He testified that, in trying to calculate a “guesstimate” of what the wife’s one-half equity would be, he averaged the amount of the 2009 appraised value and the amount that the real-estate agent told him to list the property for sale ($265,000 + $189,000 = $454,000 + 2 = $227,000),[1] then subtracted from that amount the outstanding mortgage indebtedness ($227,000 - $123,000 = $104,000), and then divided that amount by 2 ($104,-000 -r 2 = $52,000). To come up with the total amount he would need to finance, the husband testified that he added the amount he calculated for the wife’s one-half equity in the marital residence and 5 acres to the amount of the existing mortgage indebtedness ($52,000 + $123,000 = $175,000), and then added to that amount the $10,000 that he was required to pay the wife for the additional 10 acres of land ($175,000 + $10,000 = $185,000).[2]
On cross-examination, the wife’s attorney questioned the husband as to whether *1004 he had sought financing for an amount that used only the lesser $189,000 estimated value in calculating the wife’s one-half equity in the property and the amount he would need to finance. The husband responded that he had not. According to our calculations, using the lesser $189,000 estimated value, rather than taking an average of that amount and the 2009 appraised value, would have required the husband to finance only $166,000 ($189,000 - $123,000 = $66,000 -h 2 = $83,000 (wife’s one-half equity) + $123,000 (existing mortgage indebtedness) -I- $10,000 (additional 10 acres) = $166,000), $17,400 less than the $183,400 he sought from the bank. However, because the husband had not sought to obtain financing for that lower amount, we cannot know if he would have qualified for a loan in that amount.
Based on the foregoing, we conclude that the husband did not sufficiently prove that it was impossible for him to fulfill his obligation to secure refinancing under the settlement agreement. Therefore, the trial court did not exceed its discretion in declining to set aside the settlement agreement on that basis.

II.

The husband next argues that the trial court’s judgment, as amended, differs from the parties’ settlement agreement by providing that the wife may move with the parties’ children to Tuscaloosa, by entering an income-withholding order with regard to the husband’s child-support obligation, by failing to set forth the parties’ obligations for the period that the wife resides in the marital residence, by requiring the husband to drop off and pick up the parties’ children for visitation from the wife’s residence, and by providing that application of portions of the Alabama Parent-Child Relationship Protection Act, § 30-3-160 et seq., Ala.Code 1975, had been waived by the husband. Our review of the record reveals that the trial court’s judgment, as amended, does differ from the parties’ settlement agreement on those points.
“The trial court may adopt or reject such parts of the agreement as it deems proper from the situation of the parties as shown by the evidence.” Junkin v. Junkin, 647 So.2d 797, 799 (Ala.Civ.App.1994); see also Freeman v. Freeman, 84 So.3d 939, 943 (Ala.Civ.App.2011). In the present case, however, there was no evidence presented on those issues. “Thus, we cannot conclude that the trial court decided to reject the parties’ ... agreement based on the evidence adduced at the trial.” Freeman, 84 So.3d at 944 (citing Junkin, supra) Therefore, we reverse the trial court’s judgment, as amended, to the extent that it differs from the parties’ settlement agreement as set forth above, and we remand this cause for the trial court to enter a judgment in accordance with the settlement agreement.

III.

The husband also argues that the trial court exceeded its discretion in awarding the wife an attorney fee of $1,200 in its April 12, 2011, postjudgment order. In awarding the attorney fee, the trial court noted that, “other than to make the corrections needed to have the [divorce judgment] conform to the transcript,” the husband’s various motions had been filed without substantial justification. Because we conclude that more of the husband’s arguments had substantial justification than the trial court found, however, we reverse the trial court’s judgment to the extent that it ordered the husband to pay the wife $1,200 in attorney fees. On remand, the trial court is to reconsider the issue of attorney fees.

*1005
TV.

Finally, the husband argues that the trial court lacked jurisdiction to enter an order in response to a motion filed by the wife when that order was entered subsequent to the husband’s filing of his notice of appeal. We note, however, that neither the motion nor the order are in the record on appeal. Thus, we cannot determine whether the trial court acted outside its jurisdiction.
“An appellate court does not presume error; the appellant has the affirmative duty of showing error. Perkins v. Perkins, 465 So.2d 414 (Ala.Civ.App.1984). Appellate review is limited to the record and cannot be altered by statements in briefs. Bechtel v. Crown Central Petroleum Corp., 451 So.2d 793 (Ala.1984). Error asserted on appeal must be affirmatively demonstrated by the record. If the record does not disclose the facts upon which the asserted error is based, the error may not be considered on appeal. Liberty Loan Corp. of Gadsden v. Williams, 406 So.2d 988 (Ala.Civ.App.1981).”
Greer v. Greer, 624 So.2d 1076, 1077 (Ala.Civ.App.1993). Accordingly, we decline to consider the husband’s argument on this point.

Conclusion

Based on the foregoing, we reverse the trial court’s divorce judgment, as amended by the April 12, 2011, postjudgment order, to the extent that it does not comport with the parties’ settlement agreement as set forth above, and we remand this cause for the trial court to enter a judgment in accordance with the settlement agreement. We also reverse the trial court’s judgment, as amended, to the extent that it requires the husband to pay the wife $1,200 in attorney fees. On remand, the trial court is to reconsider that award in light of this opinion. The trial court s judgment is affirmed in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. We note a discrepancy in the husband's testimony on this point. The husband testified that he averaged the 2009 appraisal amount and the estimated value the real-estate agent had given him to come up with the amount he requested to borrow from the bank. However, the husband testified that he had contacted the bank a week after the February 4, 2011, hearing and that he had had the real-estate agent look at the marital residence two or three days before the post-judgment hearing on April 1, 2011. Thus, the husband would not have had the benefit of the real-estate agent’s estimated value of the property at the time he made the inquiry at the bank.

. Although the husband testified that his calculations indicated that he would need to finance $183,400, using the figures the husband testified that he used, our calculations indicate that he would have needed to finance $185,000.